UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

ROXANNE L. DONER,

                              Plaintiff,

v.                                                              7:13-CV-720

                                                                 (TJM/TWD)

COMMISSIONER OF SOCIAL SECURITY,

                              Defendant.
_____

APPEARANCES:                                     OF COUNSEL:

Law Offices of Steven R. Dolson            STEVEN R. DOLSON
*Counsel for Plaintiff*
126 North Salina Street, Suite 3B
Syracuse, NY 13202

Law Offices of Kenneth Hiller, PLLC      KENNETH R. HILLER
6000 North Bailey Avenue, Suite 1A
Amherst, NY 14226


OFFICE OF GENERAL COUNSEL           HEETANO SHAMSOONDAR
*Counsel for Defendant*
Social Security Administration
26 Federal Plaza, Room 3904
New York, New York 10278


THÉRÈSE WILEY DANCKS, United States Magistrate Judge

## REPORT AND RECOMMENDATION

This matter was referred to the undersigned for report and recommendation by the Honorable Thomas J. McAvoy, United States Senior District Judge, pursuant to 28 U.S.C. § 636(b) and Northern District of New York Local Rule 72.3. This case has proceeded in

accordance with General Order 18 of this Court which sets forth the procedures to be followed when appealing a denial of Social Security benefits. Both parties have filed briefs. Oral argument was not heard. For the reasons discussed below, it is recommended that the decision of the Commissioner be affirmed.

I.    **BACKGROUND AND PROCEDURAL HISTORY**

Plaintiff is forty-four years old. (T. at 28.) She has a high school education, and has primarily worked for various retail businesses as a manager. (T. at 29-30.) Plaintiff alleges disability due to degenerative disc disease, spinal arthritis, seizures, and anxiety. (T. at 14.)

Plaintiff applied for disability insurance benefits and SSI on November 24, 2010. (T. at 56.) The application was denied on April 19, 2011. (T. at 63-66.) Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (T. at 69.) The hearing was held on April 12, 2012. (T. at 25.) On May 4, 2012, the ALJ issued a decision finding that Plaintiff was not disabled. (T. at 19.) The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied Plaintiff's request for review on April 19, 2013. (T. at 1.) Plaintiff commenced this action on June 21, 2013. (Dkt. No. 1.)

II.    **APPLICABLE LAW**

    A.    **Standard for Benefits**

To be considered disabled, a plaintiff seeking disability insurance benefits or SSI disability benefits must establish that he or she is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A) (2006). In addition, the plaintiff's

physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

§ 1382c(a)(3)(B).

Acting pursuant to its statutory rulemaking authority (42 U.S.C. § 405(a) (2012)), the Social Security Administration ("SSA") promulgated regulations establishing a five-step sequential evaluation process to determine disability. 20 C.F.R. § 416.920 (2012). "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further." *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003).

> At the first step, the agency will find nondisability unless the claimant shows that he is not working at a "substantial gainful activity." [20 C.F.R.] §§ 404.1520(b), 416.920(b). At step two, the SSA will find nondisability unless the claimant shows that he has a "severe impairment," defined as "any impairment or combination of impairments which significantly limits the claimant's physical or mental ability to do basic work activities." [20 C.F.R.] §§ 404.1520(c), 416.920(c). At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled; if so, the claimant qualifies. [20 C.F.R.] §§ 404.1520(d), 416.920(d). If the claimant's impairment is not on the list, the inquiry proceeds to step four, at which the SSA assesses whether the claimant can do his previous work; unless he shows that he cannot, he is determined not to be disabled. If the claimant survives the fourth stage, the fifth, and final, step requires the SSA to consider so-called "vocational factors" (the claimant's age, education, and past work experience), and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. [20 C.F.R.] §§ 404.1520(f), 404.1560(c), 416.920(f), 416.9630(c).

*Thomas*, 540 U.S. at 24-25 (footnotes omitted).

3

The plaintiff-claimant bears the burden of proof regarding the first four steps. *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008) (quoting *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996)). If the plaintiff-claimant meets his or her burden of proof, the burden shifts to the defendant-Commissioner at the fifth step to prove that the plaintiff-claimant is capable of working. *Id.*

B.  **Scope of Review**

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision. *Featherly v. Astrue*, 793 F. Supp. 2d 627, 630 (W.D.N.Y. 2011) (citations omitted); *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992) (citing *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987)). A reviewing court may not affirm an ALJ's decision if it reasonably doubts whether the proper legal standards were applied, even if the decision appears to be supported by substantial evidence. *Johnson*, 817 F.2d at 986.

A court's factual review of the Commissioner's final decision is limited to the determination of whether there is substantial evidence in the record to support the decision. 42 U.S.C. § 405(g) (2012); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991). An ALJ must set forth the crucial factors justifying his findings with sufficient specificity to allow a court to determine whether substantial evidence supports the decision. *Roat v. Barnhart*, 717 F. Supp. 2d 241, 248 (N.D.N.Y. 2010); *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984). "Substantial evidence has been defined as 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Williams ex rel. Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988) (citations omitted). It must be "more than a mere scintilla" of evidence

scattered throughout the administrative record. *Featherly*, 793 F. Supp. 2d at 630; *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams*, 859 F.2d at 258 (citations omitted). However, a reviewing court cannot substitute its interpretation of the administrative record for that of the Commissioner if the record contains substantial support for the ALJ's decision. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972); *see also Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

## III. THE ALJ'S DECISION

Here, the ALJ found that Plaintiff was not disabled at step five because the medical vocational guidelines directed a finding of "not disabled." (T. at 18.) First, the ALJ found that Plaintiff's degenerative disc disease and degenerative joint disease of the spine were "severe" impairments. (T. at 14.) However, the ALJ found that Plaintiff's impairments did not meet or medically equal the listings. (T. at 15.) Then, the ALJ found that Plaintiff retained the residual functional capacity ("RFC") to perform sedentary work. *Id*. In so doing, the ALJ gave the opinion of Nurse Practitioner Alberry ("N.P. Alberry") less weight than that of the consultative examiner, because he found that N.P. Alberry's opinion that Plaintiff was not capable of sedentary work was inconsistent with her own treatment notes, other clinical findings, and Plaintiff's testimony. (T. at 17.) Then, at step four, the ALJ found that Plaintiff could no longer perform her past relevant work. (T. at 18.) Finally, at step five, the ALJ found that the medical vocational rules directed a finding of not disabled based on Plaintiff's age, education, work

5

experience, and RFC. *Id*. Therefore, the ALJ found Plaintiff not disabled. (T. at 19.)

IV.     THE PARTIES' CONTENTIONS

Plaintiff claims that the ALJ erred by failing to properly assess Plaintiff's limitations in bimanual manipulation, and by failing to properly assess N.P. Alberry's opinion. (Dkt. No. 11.)

Defendant contends that the ALJ's decision applied the correct legal standards and is supported by substantial evidence and thus should be affirmed. (Dkt. No. 13.) For the reasons set forth below, it is recommended that the decision of the ALJ be affirmed.

V.      DISCUSSION

   A.      N.P. Alberry's Opinion

Plaintiff argues that, although N.P. Alberry is not a physician, and her opinion is therefore not entitled to enhanced weight, her long treating relationship with Plaintiff should entitle her opinion to "some extra consideration." (Dkt. No. 11 at 6.) Defendant responds that, although the ALJ noted that N.P. Alberry was not an acceptable medical source, he disregarded her assessment because her opinion was contradicted by substantial evidence of record, not merely because she was a nurse practitioner. (Dkt. No. 13 at 10-11.[1]) For the reasons set forth below, the ALJ's decision to give little weight to N.P. Alberry's opinion is supported by substantial evidence.

The opinions of non-medical sources are not entitled to controlling weight. Information from other sources cannot establish the existence of a medically determinable impairment. SSR 06-03p, 2006 WL 2329939, at * 2 (S.S.A. 2006). Evidence from other sources may be used to

---

[1] Citations to Defendant's memorandum of law refer to the page numbers in the original document, rather than those assigned by the Court's electronic filing system.

demonstrate a claimant's severity of impairments and how it affects the claimant's ability to work. 20 C.F.R. § 404.1513(d) (2011). Other sources includes nurse practitioners, chiropractors, and physical therapists. § 404.1513(d)(1)-(4).

The opinions of non-treating sources must be considered because the court is required to evaluate all evidence that comes before it. 20 C.F.R. § 404.1527(c). In some situations, the opinions of other sources may be entitled to some extra consideration. *See Kohler v. Astrue*, 546 F.3d 260, 268-69 (2d Cir. 2008) (finding that the nurse practitioner's opinion should have been given some consideration because she was the only medical professional available to claimant for long stretches of time in the very rural North Country) (citing *Mongeur v. Heckler*, 722 F.2d 1033, 1039 (2d. Cir. 1983) (stating that the opinion of the nurse practitioner who treated the claimant on a regular basis was entitled to some extra consideration)). However, ALJs have the right to give the opinion the weight they believe it deserves. *Diaz v. Shalala*, 59 F.3d 307, 316 (2d Cir. 1995) (finding that the ALJ did not have to give controlling weight to a chiropractor's opinion). The ALJ should explain the reasons for the weight given to these opinions, or otherwise ensure that the discussion of the evidence in the decision allows a claimant to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case. SSR 06-03p, 2006 WL 2329939, at * 6 (S.S.A. 2006).

The factors required for analysis of a treating physician's opinion (20 C.F.R. §§ 404.1514(d), 416.927(d)) can also be applied to opinion evidence from other sources. SSR 06-03p, 2006 WL 2329939, at *4 (SSA Aug. 9, 2006). These factors include: (1) how long the source has known and how frequently the source has seen the individual; (2) how consistent the opinion is with other evidence; (3) the degree to which the source presents relevant evidence to

7

support an opinion; (4) how well the source explains the opinion; (5) whether the source has a specialty or area of expertise related to the individual's impairment(s); and (6) any other factors that tend to support or refute the opinion. *Id.*

Here, the ALJ disregarded the RFC assessment of N.P. Alberry because it is inconsistent with substantial evidence of record, including her own treatment notes. (T. at 17.) N.P. Alberry opined that Plaintiff was limited to lifting ten pounds occasionally, that she could stand or walk up to two hours per day, and sit for less than six hours per day. (T. at 295.) Regarding the above listed factors, while N.P. Alberry does have an extensive history with Plaintiff, that is only one factor. The other factors lean against assigning greater weight to N.P. Alberry's opinion.

This opinion is inconsistent with other evidence in the record. First, it is inconsistent with N.P. Alberry's own treatment notes. Although N.P. Alberry transcribed her opinion on March 3, 2011, she notes in that document that Plaintiff's most recent visit had been on January 12, 2011. (T. at 292.) The treatment notes from that visit indicate that Plaintiff completed two miles on an elliptical machine, and four miles on a bicycle or bicycle machine, the day before her visit. (T. at 288.) Plaintiff reported on *that* date that her back pain had "greatly improved" through physical therapy. *Id*. Plaintiff had rated her pain at 2/10 a month before that meeting, and 3/10 six weeks before that. (T. at 287.) N.P. Alberry's comment that Plaintiff's back pain had "greatly improved" therefore indicates that Plaintiff had minimal back pain. These notes do not, therefore, support the significant limitations presented in N.P. Alberry's opinion.

Her opinion is also inconsistent with the remaining medical evidence. Dr. Huizenga, a physician who works at the same clinic as N.P. Alberry, noted "almost basically complete resolution in [Plaintiff's] restriction" with physical therapy as of December 21, 2010. (T. at 287.)

8

Although Plaintiff reported to the consultative examiner in March 2011 that physical therapy had not provided her any relief, and reported pain significantly higher than the pain she reported to N.P. Alberry and Dr. Huizenga, the consultative examiner nevertheless found no restrictions in sitting, walking or standing. (T. at 312-14.) Based on these inconsistencies, the ALJ properly found that N.P. Alberry's opinion was entitled to less weight than the opinion of the consultative examiner, which was more consistent with the record.

For the remaining factors, it is noted that N.P. Alberry did not explain or support the differences between her opinion and her treatment notes, nor is she a specialist. For these reasons, the ALJ did not err when he gave little weight to N.P. Alberry's opinion.

This Court differentiates *Duell v. Astrue*, upon which Plaintiff relies. No. 08-CV-0969 (DNH) 2009 U.S. Dist. LEXIS 122269, 2010 WL 87298 (N.D.N.Y. Jan. 5, 2010). While it is true that the court in *Duell* remanded for the ALJ to properly give a nurse practitioner's opinion "some extra consideration," the ALJ in *Duell* had written that "less weight is given to [Nurse Miller's] opinion as she is not a physician." 2009 U.S. Dist. LEXIS 122269, at *18, 2010 WL 87298, at *6. Had the ALJ in this case done the same, remand may have been appropriate. However, the ALJ discounted N.P. Alberry's opinion for its inconsistency with other medical evidence, has properly given good reason for the weight assigned to the opinion, and gave it proper consideration before doing so.

### B. Bimanual Manipulation

Plaintiff argues that her back impairment causes a non-exertional impairment which limits her ability to bimanually manipulate, which further limits her abilities within the realm of sedentary work. (Dkt. No. 11 at 3.) She further argues that the ALJ did not properly assess this

limitation when determining Plaintiff's RFC, and that the ALJ should have called for vocational expert testimony on the issue. *Id*. at 5. Defendant argues that the evidence to which Plaintiff points in her memorandum of law is not sufficient to establish that Plaintiff had any non-exertional limitations. (Dkt. No. 13 at 11.) For the reasons outlined below, Defendant is correct.

To indicate that Plaintiff has limitations in the use of her hands, she first points to an MRI conducted in August 2011 and a nerve conduction study in January 2012. (Dkt. No. 11 at 4.) The MRI report shows cervical spondylosis at the C4-5 through C6-7 levels, but no spinal cord compression. (T. at 342.) The record is devoid of any diagnoses indicating manipulative limitations based on this MRI. The nerve conduction study mentions only mild, borderline neuropathy in the left hand. (T. at 352.) No medical evidence more recent than the nerve conduction study appears in the record, and therefore there is no medical evidence showing that this mild neuropathy created any limitations.

Plaintiff also points to a number of medical observations regarding numbness or tingling in her hands. (Dkt. No. 11 at 4-5.) Dr. Baird noted numbness in June 2007. (T. at 198.) Dr. Huang noted some decreased sensation in the left hand in September 2011. (T. at 344.) However, neither of these doctors recommended any treatment for the hands nor noted any actual difficulties with handling or manipulation. The remaining evidence which Plaintiff cites is either her own hearing testimony or self-reported symptoN.P. (Dkt. No. 11 at 4-5.) However, the ALJ found Plaintiff's own statements concerning the severity of her limitations to be not credible. (T. at 16.) Specifically, the ALJ noted that Plaintiff could cook, clean, do laundry, drive, go grocery shopping, use a computer, and work part-time as a church secretary. (T. at 17.) Furthermore, Plaintiff was able to write legibly, despite her alleged manipulative limitations, when filling out

her function report. (T. at 156-66.) In that report, she notes pain in her head and neck, and numbness in her left foot, but not in her hands. (T. at 163.) Notably, Plaintiff wrote "N/A" under the section for limitations involving the use of hands. (T. at 161.)

Medical records also contradict Plaintiff's statements. At her consultative examination, the examiner found her hand dexterity to be intact. (T. at 314.) The longitudinal record of treatment notes with N.P. Alberry is silent regarding any inability to use the hand, and Plaintiff has not, apparently, reported any limitations to her primary care professionals, because these claims do not appear in treatment notes. As Defendant correctly notes, Plaintiff must not only show that she has a medical condition, but that the impairment has caused functional limitations that preclude her from engaging in substantial gainful activity. (Dkt. No. 13 at 11) (citing *Rivera v. Harris*, 623 F.2d 212, 215-16 (2d Cir. 1980); *Coleman v. Shalala*, 895 F. Supp. 50, 53 (S.D.N.Y. 1995); *Murphy v. Sec'y of Health and Human Servs.*, 872 F. Supp. 1153, 1155 (E.D.N.Y. 1994)). There is no evidence in the record which would support the level of limitations Plaintiff claims, and the ALJ was therefore not required to incorporate Plaintiff's alleged manipulation limitations, because they are not supported by the record. *See Dumas v. Schweiker*, 712 F.2d 1545, 1553-54, n.4 (2d Cir. 1983.)

While this Court notes that vocational testimony is sometimes necessary at step five, it also notes that Plaintiff did not establish this manipulation limitation at any of the previous steps of the ALJ's analysis, at which time the burden was on the Plaintiff. *See Butts v. Barnhart*, 388 F.3d 377, 383-84 (2d Cir. 2004) (quoting *Rosa v. Callahan*, 168 F.3d 72, 82 (2d Cir. 1999)). Because the ALJ did not need to consider the unsupported alleged limitation, a vocational expert was not necessary for determining how the limitation might affect Plaintiff's ability to work.

Generally, the Commissioner meets his burden at the fifth step by resorting to the applicable medical vocational guidelines (the grids). *Rosa v. Callahan*, 168 F.3d 72, 78 (2d Cir. 1999) (citing 20 C.F.R. Pt. 404, Subpt. P, App. 2 (1986)). The grids take into account the claimant's residual functional capacity in conjunction with the claimant's age, education, and work experience. *Id*. "Based on these considerations the grids indicate whether the claimant can engage in any substantial gainful work existing in the national economy." *Id*. In cases such as this, where Plaintiff's alleged non-exertional limitations did not result in an additional loss of work capacity, an ALJ's use of the Medical-Vocational Guidelines is permissible. *Id*. at 411.

For the reasons set forth above, it is recommended that the decision of the ALJ be affirmed.

**WHEREFORE,** it is hereby

**RECOMMENDED**, that the decision of the Commissioner be affirmed.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

Dated: August 8, 2014
       Syracuse, New York

Therese Wiley Dancks
United States Magistrate Judge